**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                   No.    1:11-cr-00076-JAP

RICHARD WICKENS,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Richard Wickens argues that evidence seized from the business office of his business, Real Turf and Putting Greens (RTPG), should be suppressed because the search warrant that authorized a search of RTPG only permitted a search of RTPG's sales office. Because the Court concludes that the FBI agent who obtained the warrant and who lead the search reasonably believed that the business office and the sales office shared the same address, the Court concludes that Wickens' Motion to Suppress[1] should be denied.

**FACTS**

On May 24, 2011, the Court held an evidentiary hearing on Wickens' Motion to Suppress. At the hearing, Wickens, FBI Agent John Fay, and FBI Agent Scott Houser testified regarding the search of RTPG. In addition, both parties presented a number of exhibits. Based on the testimony of the three witnesses as well as the exhibits, the Court makes the following

---

[1]Wickens filed a Motion to Suppress Evidence (Doc. No. 34) on March 17, 2011. The Government filed its Response (Doc. No. 37) on March 31, 2011 and Wickens filed his Reply (Doc. No. 42) on April 21, 2011.

factual findings.

The FBI executed a search warrant on RTPG's property on March 1, 2011.  In order to obtain the warrant, Agent Fay submitted an affidavit to Magistrate Judge Robert Scott describing the premises to be searched and setting out in detail the probable cause for the search.  The search warrant issued by Magistrate Judge Scott authorized a search of the "premises, building and curtilage thereof, located at 301 Wyoming Boulevard NE, Albuquerque, New Mexico, further described as a green and white building bearing the words 'Real Turf & Putting Greens' with the numbers '301' on a sign pole in front of the building and as pictured in Attachment B." Attachment B is a photograph of the RTPG buildings that Agent Fay attached to his affidavit.

About a week after conducting the search, Agent Fay learned from an RTPG employee that the address listed on the search warrant was incomplete.  While 301 Wyoming is the address of one of the buildings owned and occupied by RTPG, RTPG also owns two adjacent buildings—251 Wyoming and 305 Wyoming. 251 Wyoming is the business office of RTPG where the majority of RTPG's business records were kept, where Wickens's office was located, and where a number of administrative employees were located.  301 Wyoming is the sales office and showroom of RTPG where the public placed orders for RTPG's products. Finally, 305 Wyoming was a storage facility that contained RTPG's products.[2]

The photograph attached to the warrant depicts both 251 and 301 Wyoming.  The portions of both buildings that are visible from the front of the buildings (and thus visible in the Attachment B) are painted in a similar green and white color scheme.  In addition to the common paint scheme on the front of the two buildings, there are also three large RTPG signs in front of

---

[2]Because 305 Wyoming was not searched, the majority of the Court's discussion will focus on 251 and 301 Wyoming.

the buildings.  As viewed from a vantage point looking toward the front of the buildings, there is

a large ground-level sign next to the sidewalk on the right edge of 301 Wyoming.  This sign has

the numbers "301" in white paint with a red background as well as the words "Real Turf" and

"Synthetic Grass" in green lettering.    There is a large green and white sign on a pole in front of

301.  This sign says "Real Turf & Putting Greens" and "The Look & Feel of Grass.". The white

pole that supports the sign has the numbers "301" stenciled in green paint.  Finally, there is a

large white sign with green lettering on some type of tower that rises out of the lot on the far left

side of 251 Wyoming.  This sign has the words "Real Turf & Putting Greens" as well as a phone

number that is presumably for RTPG.

While the buildings look like a unified complex from the front, the backs of the buildings

do not share a similar color scheme, the buildings are separated by a gap of approximately six

inches, and each building has separate utility lines. In addition, there are separate driveway

entrances to each building and there are parking barriers in the parking lots between the two

buildings that prevent vehicles from driving from building to building within the parking lot.

Thus, a car that entered 251 Wyoming's driveway would be forced to park in front of 251

Wyoming while a car that entered the 301 Wyoming driveway would be required to park in front

of 301 Wyoming.  The driveway to each building has small curb markings indicating the address

of the building to which the driveway leads. The curb markings are fairly faded and, in the

photograph that Wickens provided to the Court at the hearing, there is a large amount of what

appears to be dirt and rocks in the area around the curb markings.  In addition to the curb

markings, the numbers "251" are attached to one of the three doors leading into 251 Wyoming.

Prior to obtaining the search warrant, Agent Fay drove by RTPG on at least two

occasions.  Agent Fay drove by once on Wyoming, the street in front of RTPG, and once on the

3

street parallel to Wyoming in the rear of RTPG. When Agent Fay drove past the rear of RTPG,

Agent Fay did not notice that separate utility lines ran into each of the three RTPG buildings.

Agent Fay did not obtain RTPG's utility records or the deeds for RTPG's property.  Based on his

observations of the buildings, Agent Fay believed that 301 Wyoming was the address for three

buildings.  In fact, in a draft of his affidavit, Agent Fay described the location to be searched as a

complex of three buildings located at 301 Wyoming.  At the hearing, Agent Fay explained that

each building has a different setback from the street and a different roofline.  However, what

Agent Fay believed to be three buildings was actually two buildings—the standalone building

located at 251 Wyoming and one building with two different roof levels and setbacks from the

street located at 301 Wyoming.[3] Agent Fay also explained that he used the word "complex"

because he believed that the "three" buildings were a unified place of business.

In addition to driving by RTPG, Agent Fay obtained information from the New Mexico

Public Regulation Commission that identified the address of RTPG as 301 Wyoming and Agent

Fay obtained records from Bank of Albuquerque, the bank Wickens allegedly defrauded, that

also listed RTPG's address as 301 Wyoming.  Agent Fay then instructed Agent Houser to

photograph RTPG.  Agent Houser, who had conducted surveillance of the RTPG property,

parked across the street from the front of RTPG and took a photograph which was then attached

by Agent Fay to his affidavit in support of the search warrant.  Agent Fay testified that he

believed that the photograph depicted "the entirety of the offices of RTPG." Tr at 89:9-10.

Agent Fay also testified that the goal "was to show in a photograph to the magistrate as clearly

---

[3]While RTPG also owned 305 Wyoming, a building adjacent to 301 Wyoming, Agent
Fay did not search that building and did not know, until the time of the hearing, that RTPG even
owned and occupied that building.  Thus, Agent Fay's belief that there were three buildings is
based solely on his observation of 251 Wyoming and 301 Wyoming.

4

as we could what we wished to search."  Tr. at 91:3-5.  Neither Agent Fay nor Agent Houser

noticed that 251 Wyoming had a different address than 301 Wyoming prior to obtaining the

search warrant.

At the time of the search, Agent Fay did not see the numbers "251" on the door to 251

Wyoming or on the curb in front of 251 Wyoming.  Agent Fay testified that there were

approximately twenty law enforcement personnel present at the time of the search and that

because the primary focus during any search is the safety of the officers executing a search and

the occupants of a building, Agent Fay was not looking at the numbers on the doors they entered.

During the course of the search, none of the RTPG employees on the premises alerted the agents

to the fact that 301 Wyoming was the address of only  one of the two buildings.  In fact, it was

not until approximately one week after the search that Agent Fay learned that the FBI had in fact

searched two separate addresses—251 and 301 Wyoming.

In addition to Agent Fay's testimony regarding his belief that 251 Wyoming and 301

Wyoming both shared the 301 Wyoming address, Wickens himself testified that the buildings

appeared to be one premises.  Wickens testified that he painted 251 Wyoming and 301 Wyoming

in the same color scheme so that there would be "one clean appearance for both [the] business

office and [the] sales office next door."  Tr. at 45 ln10-12.  When asked if he "wanted it to be

one clean appearance to appear to the public that it was one business," Wickens answered "that

is correct." *Id.* at ln 13-15.  While Wickens testified that he did not have the RTPG name

stenciled on 251 Wyoming because he "didn't want people walking in thinking that [251

Wyoming] was the sales office," Wickens also testified that he kept the front door to his office at

251 Wyoming locked and entered through a back door "so [he] would not get walk-in traffic

through the front door" of his office. Tr. at 51:16-24.  Thus, Wickens recognized that both 251

5

and 301 Wyoming appeared to be one building to the extent that it was necessary to use a rear door to prevent customers from accidently going into 251 Wyoming.

## DISCUSSION

### I. Constitutionality of the Search of 251 Wyoming

### A. Agent Fay Reasonably Believed that 251 Wyoming and 301 Wyoming Shared the Same Address

As an initial matter, the Court concludes that Agent Fay reasonably believed that 251 Wyoming and 301 Wyoming shared the same address—301 Wyoming. In determining whether an officer acted reasonably, the Court is required to evaluate law enforcement officers "conduct in light of the information available to them at the time they acted," not on basis of information that is discovered after the search. *Maryland v. Garrison*, 480 U.S. 79, 85 (1987).  As the United States Supreme Court held, "items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued" and "the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant." *Id.*  Instead, "[t]he validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate."

Agent Fay obtained documents from the NMPRC and Bank of Albuquerque indicating that RTPG's address was 301 Wyoming.  Agent Fay then drove by 301 Wyoming and saw a complex of buildings with a green and white color scheme bounded on either end by signs with the words "Real Turf and Putting Greens."  At least one of these signs had large numbers indicating that the address was 301 Wyoming.  There were no similar large signs bearing the address 251.  The large RTPG signs in front of both buildings showing the address 301, both

6

buildings having a uniform color scheme, and RTPG's business address being listed with the
NMPRC and on RTPG's communications with the bank as 301 Wyoming would lead a
reasonable person to believe that the two buildings did not have separate addresses.  In fact, as
Wickens himself testified, it was necessary to keep the door to Wickens' office in 251 Wyoming
locked to prevent customers from mistakenly going into 251 Wyoming rather than 301
Wyoming.  Thus, not only did Agent Fay believe that both buildings were a unified complex, but
Wickens' use of large RTPG signs and a unified paint scheme led customers of RTPG to have
the same belief.

Because of the uniform nature of the buildings and the large signs that identified the
business and indicated that the address was 301 Wyoming, Agent Fay's "conduct was consistent
with a reasonable effort to ascertain and identify the place intended to be searched within the
meaning of the Fourth Amendment." *Garrison*, 480 U.S. at 88.  And, in light of the pre-search
surveillance that Agent Fay conducted, the Court concludes that Agent Fay had no reason to
believe that he might be planning to search two separately addressed buildings and that Agent
Fay did not have any duty to make further investigation after driving by RTPG and observing the
uniformly painted buildings with large signs in front of them that matched the registered
business address for RTPG and the address RTPG had provided to the bank.

The fact that there were curb markings and numbers on one of the doors to 251 Wyoming
that indicated that the building had a separate address does not preclude the Court from finding
that Agent Fay had a reasonable belief that the buildings were both part of 301 Wyoming.
Having gathered evidence that RTPG was located at 301 Wyoming and having confirmed this
fact by driving by the premises, Agent Fay had no reason to make any additional inquiry or
scrutinize the fading curb markings that might have informed Agent Fay that 251 Wyoming was

actually a seperately addressed building.

Further, the fact that there were parking barriers between the two buildings and a small gap between the two buildings does not diminish the reasonableness of Agent Fay's belief that both buildings shared the same address. There is nothing about a gap or a parking barrier that inherently indicates that two buildings do not share the same address, especially when there are large signs on either end of the two buildings identifying the entire premises as RTPG and both buildings have an identical color scheme. Similarly, the fact that the FBI later discovered that there were separate utilities for 251 and 301 Wyoming and separate property deeds for each building does not make Agent Fay's belief that both buildings shared the same address unreasonable as Agent Fay had no obligation to search the utility records or obtain the property deeds for RTPG's offices. In fact, while Agent Fay conceded that utility records are frequently used to determine the owner of residential property, Agent Fay testified that such a check was not necessary here as the buildings were clearly marked as RTPG buildings and Agent Fay had already confirmed that RTPG's business address was 301 Wyoming.

Finally, while Agent Fay initially referred to the location to be searched as a complex of three buildings located at 301 Wyoming, the fact that Agent Fay recognized that 251 Wyoming was a separate building does not mean that Agent Fay knew or should have known that 251 Wyoming was a separately addressed building. In fact, Agent Fay believed that a portion of 301 Wyoming that contained a number of garage bay doors was also a separate building even though that building is actually connected to and a part of 301 Wyoming. In addition, while Wickens argues that Agent Fay should have known that there were two separate addresses because the back of each building was painted differently, the Court concludes that the fact that the backs of the buildings looked different only put Agent Fay on notice that there were two buildings, not

8

that those buildings might have separate addresses.

Because the Court finds that there were no objective facts available to Agent Fay prior to the search that should have put Agent Fay on notice that there were two separately addressed buildings, the Court concludes that Agent Fay reasonably believed that 251 Wyoming was a part of 301 Wyoming.

### B. The Warrant Itself Authorized a Search of 251 Wyoming

"The Fourth Amendment requires search warrants to particularly describe the place to be searched, and the persons or things to be seized." *United States v. Angelos*, 433 F.3d 738, 745 (10th Cir. 2006) (alteration marks omitted). "This requirement ensures that the scope of a search is limited to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *United States v. Brown*, 984 F.2d 1074 (10th Cir. 1993). In addition, this requirement "prevents a general, exploratory rummaging in a person's belongings and makes impossible general searches leaving nothing to the discretion of the officer executing the warrant." *Id.* (quotation marks and citation omitted).

The warrant in this case authorized a search of "[t]he premises, building and curtilage thereof, located at 301 Wyoming Boulevard NE, Albuquerque, New Mexico, further described as a green and white building bearing the words "Real Turf & Putting Greens" with the numbers "301" on a sign pole in front of the building and as pictured in Attachment B." Attachment B is a photograph of 251 Wyoming and 301 Wyoming that was attached to the warrant. Wickens contends that the evidence seized from 251 Wyoming should be suppressed because the warrant only expressly authorized a search of 301 Wyoming. The Government acknowledges that the warrant only listed the address of one of the two buildings that were searched but asserts that the warrant contained sufficient detail to inform law enforcement officers of the location to be

9

searched and thus eliminated any possibility of a general or exploratory search.  The

Government also notes that the photograph of the buildings attached to the warrant cures any

defect in the listed address and demonstrates Agent Fay's intent to search both buildings.

In determining the precise scope of a warrant, the Tenth Circuit has instructed that courts

employ "a standard of practical accuracy rather than technical precision." *United States v.*

*Ortega-Jimenez*, 232 F.3d 1325, 1328 (10th Cir. 2000). "The test for determining the adequacy

of the description of the location to be searched is whether the description is sufficient to enable

the executing officer to locate and identify the premises with reasonable effort, and whether

there is any reasonable probability that another premise might be mistakenly searched." *United*

*States v. Lora-Solano*, 330 F.3d 1288 (10th Cir. 2003).  Thus, "a partially erroneous description

[is] not fatal where officers nonetheless [are] able, with reasonable effort, to ascertain the area to

be searched." *United States v. Dahlman*, 13 F.3d 1391, 1394 (10th Cir. 1993). In addition,

where a term of a warrant is ambiguous, a court can "adopt a 'practical reading' of [the] disputed

term." *Angelos*, 433 F.3d at 745.  However, where a warrant describes the place to be searched

and items to be seized "with particularity, and without ambiguity," the scope of the warrant must

be limited by the unambiguous language of the warrant. *Id.* at 746.

Wickens argues that because the warrant expressly authorized a search of 301 Wyoming,

the warrant clearly and unambiguously only allowed a search of that address. That is, Wickens

contends that the warrant cannot be read with practicality to also permit a search of 251

Wyoming. Wickens contends that the warrant contained no constitutional or clerical defects, but

the Court disagrees.  Because Agent Fay reasonably but incorrectly believed that both of the

buildings that he intended to search shared the same address, the warrant contains a defect in that

it incorrectly lists only one of the two addresses that was to be searched. Because of Agent Fay's

10

misconception that there was only one address, the address listed on the warrant is in fact

ambiguous.  As the term is used in the warrant, 301 Wyoming actually refers to two separate

addresses.  Thus, the Court concludes that the use of the address "301 Wyoming" is in fact

ambiguous under the circumstances of this case. Consequently, the Court must determine

whether the ambiguity in the warrant is cured by the language in the affidavit and the photograph

attached to the warrant.

The Tenth Circuit has consistently held that "the particularity of an affidavit may cure an

overbroad warrant" as long as (1) "the affidavit and the warrant are physically connected so that

they constitute one document" and (2) "the search warrant . . . expressly refer[s] to the affidavit

and incorporate[s] it by reference using suitable words of reference."  *United States v. Leary*,

846 F.2d 592, 603 (10th Cir. 1988).  While this rule is typically used to narrow an overly broad

warrant, the same rule applies here because the Court is determining the meaning of a disputed

term in a warrant. *See id.*

Agent Fay's affidavit was attached to the warrant. In addition, the warrant expressly

refers to the affidavit in that the warrant states that the Magistrate Judge is "satisfied that the

affidavit . . . establish[es] probable cause . . . and establish[es] grounds for the issuance of th[e]

warrant."  While the warrant does not expressly incorporate the affidavit using suitable words of

reference, the warrant does expressly incorporate the photograph of 251 and 301 Wyoming as

well as an attachment describing the items to be seized.

Although the affidavit was not incorporated into the warrant, this does not preclude the

Court from considering the affidavit in determining whether the search warrant adequately

described the place to be searched.  In *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir.

1998), the Tenth Circuit upheld a district court's reliance on an affidavit, despite the fact that the

affidavit was not incorporated into the warrant, because "the same officer . . . produced the affidavit and executed the search warrant."  In *Simpson*, the warrant only authorized the search of the defendant's person.  The affidavit, however, sought a warrant to search "persons, premises, and/or vehicles."  *Id.* Thus, the Tenth Circuit concluded that the "affidavit certainly supports the district court's conclusion that [the officer] in good faith believed he was obtaining a warrant to search [the defendant's] residence as well as his person."  The Tenth Circuit noted that in light of the officer's good faith belief, to call the "warrant insufficient would be to ignore the admonition that practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched."  *Id.* (quotation marks omitted). The Tenth Circuit later expanded on its holding in *Simpson* and held that, even if an affidavit is not attached to and incorporated by reference into a warrant, "an affidavit may be used to clarify with 'practical accuracy' the meaning of a disputed term in a warrant when the same person is both affiant and executing officer."  *United States v. Ortega-Jiminez*, 232 F.3d 1325 (10th Cir. 2000).

Despite incorrectly listing the address to only 301 Wyoming, Agent Fay made clear in his affidavit that he intended to search the "office, storage facilities, records and computers of Real Turf & Putting Greens."  Affidavit at 1.  In addition, the photograph that Agent Fay attached to his affidavit clearly depicts both 251 and 301 Wyoming—buildings that are separated by a gap of only a few inches, share a unique paint scheme, and are bounded on either side by "Real Turf and Putting Greens" signs.  Because the description of the places to be search included *all* of RTPG's offices and storage facilities, and because the photograph attached to the warrant depicted both of the buildings that Agent Fay intended to search, the Court concludes that a practical reading of the warrant and the affidavit permitted a search of both 301 and 251

12

Wyoming despite the fact that the warrant incorrectly only included the 301 Wyoming address. The fact that the warrant incorporated a photograph of both 251 Wyoming and 301 Wyoming ensured that the agents executing the warrant were able to locate and identify the premises to be searched and eliminated any reasonable probability that another premises might be searched. This is especially true in light of the fact that Agent Fay lead the search of the two buildings that he believed to be 301 Wyoming. *See Ortega-Jiminez*, 232 F.

To limit the search to only encompass 301 Wyoming would be to ignore the Tenth Circuit's admonition that practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched. If the warrant had entirely omitted *any* address but contained the same description and photograph, the warrant, in conjunction with the affidavit and photograph, would clearly have authorized a search of both 251 and 301 Wyoming. Because the search was conducted only on the "office, storage facilities, records and computers of Real Turf & Putting Greens" and only encompassed the buildings depicted in the photograph that Agent Fay attached to the warrant, the Court concludes that the FBI's search of RTPG was within the scope of the warrant and that Wickens' Motion to Suppress should be denied.

**C. Even if the Search Exceeded the Scope of the Warrant, the Agents Acted Reasonably in Doing So.**

Even if the Court were to assume that the warrant only expressly permitted a search of 301 Wyoming, the Court would nevertheless conclude that Agent Fay acted reasonably in exceeding the scope of the warrant by searching 251 Wyoming. When law enforcement officers are alleged to have exceeded the scope of a warrant, the Court must determine "whether the officers executing the warrant acted reasonably in exceeding the scope of the warrant" by

13

searching areas that were not expressly authorized by the warrant. *Angelos*, 433 F.3d at 746. As the Supreme Court explained in *Garrison*, "the validity of [a] search . . . depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." 480 U.S. at 88.

In *Garrison*,[4] police officers obtained a warrant to search the third floor of an apartment building based on probable cause that the resident of the third floor apartment was engaged in criminal acticity. When the officers arrived on the third floor, they were confronted with two open doors and the officers entered and searched the rooms behind both of the doors. After seizing contraband from one of the rooms, the officers realized that there were in fact two apartments on the third floor and that the warrant authorizing a search of the entire third floor was overly broad as probable cause only existed as to one of the two individuals residing on the third floor. *Id.* at 81. In concluding that the officers acted reasonably in searching the entire third floor, the Supreme Court noted that "[t]he objective facts available to the officers at the time suggested no distinction between [the defendant's] apartment and the third-floor premises." *Id*. at 88. Similarly, in *United States v. Smith*, 531 F.3d 1261, 1266 (10th Cir. 2008), officers obtained a warrant to search a residence located at "311 SE 41st Street." While executing the warrant, the officers also searched a detached garage apartment which turned out to be "a separate residence located at 311 ½ SE 41st Street." *Id.* In concluding that the officers' "failure to realize" that the garage was a separately addressed building "was objectively reasonable, the

_____

[4]While *Garrison* deals with an overbroad warrant, rather than an overly narrow warrant, the case is controlling as it sets out the analysis of a search that exceeds the scope of a warrant. In addition, while *Garrison* dealt with a search that exceeded the scope of the probable cause in the warrant, the search in this case only exceeded the description of the place to be searched as probable cause existed for searching all of RTPG's offices.

Tenth Circuit noted that the house and the garage were surrounded by a tall fence, the case agent had verified that vehicles in the driveway were registered to the owner of the home and the defendant, and the owner of the home "demonstrated access and control over the entire premises."

The Court has already concluded that Agent Fay, like the law enforcement officers in *Garrison* and *Smith*, reasonably believed that the address of both of the buildings that he searched was 301 Wyoming. At the time of the search, there were no objective facts available to Agent Fay that suggested that there was a distinction between 301 Wyoming and 251 Wyoming. The uniform paint scheme, RTPG signs, and large numbers indicating that the address of both buildings was 301 Wyoming, much like the fence around the garage and residence in *Smith*, precluded Agent Fay from realizing that the buildings had separate addresses. In addition, while Wickens contends that the Agents should have noticed that they were entering a separately addressed building when they searched 251 Wyoming because of the numbers on the curb and the door, the Court found credible Agent Fay's testimony that the concern for officer safety at the time that a search is executed prevented the agents from seeing the numbers on the door to 251 Wyoming.  Given the stressors involved in executing a warrant, the Court agrees that it was not unreasonable for Agent Fay or any of the other officers involved in executing the warrant to have failed to see the numbers on the door to 251 Wyoming.  As the Supreme Court has recognized, there is a "need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants". *Garrison*, 480 U.S. at 87. Since Agent Fay, who reasonably believed that both buildings shared the same address, lead the search of the buildings and identified the locations that were going to be searched, there was no reason for any of the agents, including Agent Fay, to confirm that the

15

building they were entering was 301 Wyoming as the buildings they were searching matched the buildings in the photograph attached to the warrant and matched the buildings that Agent Fay and Agent Houser had surveilled prior to the search.

Because Agent Fay had a reasonable belief that he was searching 301 Wyoming when he was actually searching 251 Wyoming, the Court concludes that the search of 251 Wyoming was constitutionally justifiable. Just as a search of an entire third floor building is permissible if the officers have no reason to believe that there are multiple apartments, the search of two separate buildings is also permissible if the officer has no reason to believe that the buildings have separate addresses.  And, since Agent Fay did not see anything that put him on notice that he was searching a separately addressed building, Agent Fay reasonably believed that he was searching a building located at the address expressly authorized by the warrant.  In addition, much like situation with the home owner who exercised control over and permitted a search of the seperately addressed garage in *Smith*, the fact that none of the RTPG employees present during the search, including Wickens himself, informed the agents that they were searching a separetely addressed building further enhances the reasonableness of Agent Fay's failure to realize that he had exceeded the scope of the warrant.

Agent Fay's belief that he had not exceeded the scope of the warrant stands in stark contrast to the search that the Tenth Circuit in *Angelos* held to be an unreasonable departure from what was authorized by a warrant. The warrant in *Angelos* only authorized the seizure of narcotics located in the trunk of a vehicle and a safe in the basement of a residence. The Tenth Circuit concluded that the officers did not act reasonably in also seizing items found elsewhere in the residence because the officers either "knew the limits of the warrant and decided to disregard them, or they never bothered to read the warrant itself." *Id.* at 746.  The Tenth Circuit

explained that "[a]ssuming the agents executing the warrant actually read it, they reasonably should have noticed its limited scope." *Id.* Key to the Tenth Circuit's conclusion, however, is the fact that the warrant clearly had a limited scope and the agents reasonably should have noticed that they had exceeded the scope of the warrant when they began to seize items other than the narcotics in the trunk of the vehicle and the safe in the basement of the home. That is, it should have been obvious to the officers that they had exceeded the scope of the warrant when they began to seize items located in other areas of the home. Here, as the Court has already explained, while the warrant listed only the 301 Wyoming address, the agents executing the search reasonably did *not* notice that they were searching a separately addressed building and thus did not know that they had exceeded the scope of the warrant. Even after reading the warrant and understanding its limitations, it was not obvious to the agents that they were exceeding the scope of the warrant since they did not realize that the buildings had separate addresses. Thus, the Court concludes that to the extent that the agents exceeded the scope of the warrant, the agents were reasonable in doing so and the search of 251 Wyoming was therefore valid.

## II. Photograph

Wickens next argues that the search warrant should be voided because Agent Fay attached a photograph to his affidavit that was recklessly misleading. According to Wickens, Agent Houser intentionally photographed the buildings at an angle in an attempt to conceal the fact that 251 and 301 Wyoming were actually separate buildings. Wickens argues that under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant must be voided and the fruits of the search suppressed if the Court finds that the affiant knowingly or recklessly included false information in an affidavit supporting the issuance of a search warrant and if, after excluding the

17

false statements, the corrected affidavit does not support a finding of probable cause.

Because the Court concludes that Agent Fay justifiably believed that the two buildings in the photograph shared the 301 Wyoming address, the Court cannot conclude that Agent Fay knowingly or recklessly included false information in the affidavit.  And, since the facts outlined in Agent Fay's affidavit establish probable cause to search the entire RTPG premises, there is no apparent reason for Agent Fay to have knowingly attempted to deceive Magistrate Judge Scott in an attempt to unlawfully expand the search.  If Agent Fay had known that there were two separate addresses, the statements in his affidavit would have supported a warrant to search both addresses. Thus, Wickens' request that the photograph be stricken from the record is denied.

## III.  Seized Items

Wickens also argues that the FBI exceeded the scope of the search by seizing items that were not described on the itemized list of items that could be seized from the property.  Wickens contends that the FBI seized four items that were not permitted—a phone message book, a company vehicle list, a list of company officials, and a newspaper article about fraud. The Government contends that it was permitted to seize all of these items and that while the items were not described on the list of items to be seized in detail, it was permitted to seize the items because they were described in broad and generic terms in the list of sizable items.

The warrant permitted the seizure of all items listed in "Attachment A."  "Attachment A" is a three page document that describes the types of items that can be seized. "Attachment A" uses both specific and general terms to describe the items that the Government was permitted to seize.  The Tenth Circuit has made clear that "a warrant that describes the things to be seized in broad and generic terms may be valid if the description is as specific as circumstances and the nature of the activity under investigation permit."  *United States v. Harris*, 903 F.2d 770, 775

18

(10th Cir. 1990).

## A. Phone Record Book

The Government seized a phone message book that the Government described as a "spiral-bound phone book." It contains a carbon paper copy of messages that were written in the book. The Government contends that the warrant permitted the seizure of the phone record books under categories K, L, M, and N. Category "K" permitted the seizure of "[a]ny records or communications regarding the financial condition of the company for the year." Category 'L' permitted the seizure of "[f]inancial records to include, but not limited to, financial statements, income statements, balance sheets, accounts payable records, accounts receivable records, bookkeeping records, and inventory." Category "M" permitted the seizure of "[a]ny records or documents relating to contracts, proposals, or agreements to install artificial turf or to provide services." Finally, Category N permitted the seizure of "[a]ny records or documents relating to the installation of artificial turf." The Court agrees with the Government that the phone message book falls within Categories M and N. Since the book contains handwritten messages from individuals who called RTPG, the book contains information related to the "contracts, proposals, or agreements to install artificial turf or to provide services" and information "relating to the installation of artificial turf." Phone messages left by customers and potential customers of a business that installs artificial turf necessarily relate to contracts, proposals, or agreements to install turf and the installation of turf. Thus, the Court concludes that the phone message book was properly seized and will not be suppressed.

## B. Company Vehicle List

The Government asserts that the company vehicle list falls within Category 'P', which permitted the seizure of "[a]ny record or item associated with inventory." Because the vehicles

could be classified as inventory, and because Wickens does not challenge this assertion in his Reply, the Court concludes that the company vehicle list was properly seized and that the list will not be suppressed.

## C.  List of Company Officials and Newspaper Article

The Government contends that the list of company officials and the newspaper article about fraud fall within the terms of category "E" which permits the seizure of "[any computer or electronic records, documents, and materials . . . in whatever form and by whatever means such records, documents, or materials . . . may have been created." At the hearing, the parties clarified that the newspaper article is a clipping from a printed version of the Albuquerque Journal newspaper. The parties did not explain the form in which the list of company officials appeared.

Because Category E permitted the Government to seize a wide variety of documents and materials, the Court concludes that the company officials list and the article about fraud were properly seized.  With respect to the list of company officials, the list is included within Category E regardless of whether the list was handwritten or printed from an RTPG computer as Category E permits the seizure of documents in "hand-made form (such as writing or marking with any implement on any surface)" as well as "printouts or readouts from any magnetic storage device."  Similarly, with respect to the newspaper article, Category E permitted the seizure of documents created in "any mechanical form (such as . . . printing or typing). Because the newspaper article is a printed document, the newspaper article falls within Category E.  Thus, the Court concludes that neither the company official list nor the newspaper article about fraud should be suppressed.

**IT IS ORDERED THAT** Defendant Richard Wickens' Motion to Suppress Evidence (Doc. No.

34) is DENIED.

_____

SENIOR UNITED STATES DISTRICT COURT JUDGE